[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14377
Non-Argument Calendar
_____

Agency No. A095-969-131


ENTELA RUGA,
a.k.a. Entela Dollaku,
a.k.a. Entela Miranda,

                                                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                        Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 2, 2014)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

Entela Ruga,[1] a native and citizen of Albania, petitions this Court for review from a decision of the Board of Immigration Appeals (BIA). The BIA's decision affirmed an Immigration Judge's (IJ) finding that Ms. Ruga was subject to removal and ineligible for relief from deportation under the Immigration and Nationality Act (INA) because she knowingly filed a frivolous application for asylum. In her petition, Ms. Ruga argues that (1) she did not receive notice, in accordance with the statutory requirements, of the grave consequences of filing a frivolous asylum application; and (2) an IJ order granting her motion to reopen had the effect of triggering a new requirement that she be re-notified of the consequences of continuing to pursue a frivolous asylum application.[2] After careful consideration, we deny the petition.

---

[1] Ms. Ruga filed her asylum application under the name "Entela Dollaku," but does not dispute that the application in the administrative record is her own. To avoid confusion, this opinion uses "Ms. Ruga" throughout.

[2] Ms. Ruga also claims that the frivolity determination does not preclude her from seeking withholding of removal and that the notice deficiencies violate her constitutional due process rights. But Ms. Ruga did not pursue her application for withholding of removal after withdrawing her asylum application or advance her due process claim before the BIA, so these issues are not properly before us. See INA § 242(d)(1), 8 U.S.C. § 1252(d)(1) (noting that this Court may review a final order of removal only to the extent that the alien "exhausted all administrative remedies"); see also Amaya-Artunduaga v. U.S. Attorney Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto."); Sundar v. INS, 328 F.3d 1320, 1325 (11th Cir. 2003) (finding that even due process challenges must be exhausted "where the claim is within the purview of the BIA which can provide a remedy").

2

I.

Ms. Ruga was admitted to the United States in April 2001 on a tourist visa. In 2004, she filed for asylum. The asylum application contained a number of assertions of persecution and abuse in Albania, which Ms. Ruga admits are false. At the end of the standard I-589 asylum application form Ms. Ruga signed, it contained the following warning in bold typeface:

> WARNING: Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an Asylum Officer or an Immigration Judge. Any information provided in completing this application may be used as the basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. See 208(d)(6) of the Act and 8 CFR § 208.20.

Ms. Ruga signed her name below the warning.

After she submitted the application, she met with an asylum officer for an interview. At the start of the interview, Ms. Ruga signed an oath which reiterated the warning on the I-589 application form:

> I also understand that if I filed my asylum application on or after April 1, 1997, I shall be permanently ineligible for any benefits under the Immigration and Nationality Act if I knowingly filed an application for asylum in which any of the material elements were deliberately fabricated.

3

Again, Ms. Ruga signed underneath this warning. During the interview with the asylum officer, Ms. Ruga stood by many of the false representations contained in her application.

The asylum officer reviewing Ms. Ruga's application referred it to an IJ because he did not think the application should be granted. Ms. Ruga was served with a notice to appear charging her as removable in 2004, and in 2007 she was served with notice of additional charges of removability, including the charge that she was not entitled to any relief under the INA because she knowingly filed a frivolous asylum application.

The IJ, proceeding with Ms. Ruga in absentia because she did not attend the scheduled hearing, initially found her removable and ineligible for relief from removal because she filed a frivolous asylum application. The IJ, however, vacated this determination after Ms. Ruga filed a motion to reopen her removal proceedings six months later. Ms. Ruga, however, fared no better the second time. The IJ again concluded that Ms. Ruga was ineligible for relief under the INA because she knowingly filed and pursued a frivolous asylum application, over her objections to the notice she received about the consequences of filing a frivolous application. The BIA affirmed the IJ's decision on appeal. Ms. Ruga asks us to reverse the BIA's determination that the notice she received about frivolous applications conformed to the statutory requirements.

4

II.

It is important first to clarify the issues before us in this appeal and the nature of our review. The only questions we are considering are (1) whether the written warnings provided to Ms. Ruga satisfied the requirement that she be notified of the consequences of filing a frivolous application; and (2) what, if any, effect the granting of her motion to reopen had on the adequacy of the notice she was provided before her motion was granted. Ms. Ruga does not challenge in this appeal the BIA's determination that she knowingly filed a frivolous application. Neither does she argue that she did not see or that she failed to understand the written notice included on her I-589 form or provided to her during her interview with the asylum officer. Because she has not raised these issues in her brief on appeal, she has abandoned them and they have no bearing on our decision. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) ("When an appellant fails to offer argument on an issue, that issue is abandoned."); Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (citations omitted)).

We review de novo the BIA's finding, based on statutory interpretation, that Ms. Ruga received notice consistent with the statutory requirements. See Barreto-Claro v. U.S. Attorney Gen., 275 F.3d 1334, 1338 (11th Cir. 2001). When

conducting our review, we look in this case to both the BIA decision and the IJ decision, because the BIA "explicitly agreed" with the IJ's findings about the adequacy of the notice Ms. Ruga received. Xiu Ying Wu v. U.S. Attorney Gen., 712 F.3d 486, 492 (11th Cir. 2013).

III.

Under the INA, an alien who "has knowingly made a frivolous application for asylum and . . . received the notice under paragraph (4)(A) . . . shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application." INA § 208(d)(6), 8 U.S.C. § 1158(d)(6). Paragraph (4)(A) provides that, "[a]t the time of filing an application for asylum, the Attorney General shall . . . advise the alien . . . of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum."[3] Id. § 208(d)(4), 8 U.S.C. § 1158(d)(4). "[A]n asylum application is frivolous if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20.

---

[3] The statute also requires that the Attorney General "advise the alien of the privilege of being represented by counsel." INA § 208(d)(4)(A), 8 U.S.C. § 1158(d)(4)(A). It bears mention that neither the warning on the I-589 application form nor the oath Ms. Ruga signed before the asylum officer advised her of her right to representation. But Ms. Ruga's brief explicitly limits her arguments on appeal to challenge the adequacy of the notice she received about the consequences of filing a frivolous application. As a result, our opinion today is limited to analyzing the adequacy of the notice about the consequences, see Sepulveda, 401 F.3d at 1228 n.2, and has nothing at all to say about whether Ms. Ruga received notice satisfying every requirement set forth in INA § 208(d)(4)(A), 8 U.S.C. § 1158(d)(4)(A).

A.

Ms. Ruga first argues that the notice she received did not comply with the requirements set forth in paragraph (4)(A) because the notice was not provided to her by an IJ during the course of her removal proceedings.

Although the question Ms. Ruga raises is a novel one in our Circuit, three other Circuit Courts have considered the adequacy of the same written notices Ms. Ruga received. See Pavlov v. Holder, 697 F.3d 616, 618 (7th Cir. 2012); Cheema v. Holder, 693 F.3d 1045, 1049–50 (9th Cir. 2012); Ribas v. Mukasey, 545 F.3d 922, 928–30 (10th Cir. 2008). We are persuaded by the reasoning from these opinions, each of which concludes that written warnings meet the INA notice requirement and that there is no need for that notice to be provided by an IJ.

Pavlov is especially useful to us in addressing Ms. Ruga's arguments. Mr. Pavlov argued, as does Ms. Ruga, that only a warning provided by the IJ during the removal proceedings would meet the notice requirement. Pavlov, 697 F.3d at 618. The Seventh Circuit noted that the Department of Homeland Security provided Mr. Pavlov notice of the consequences twice: "once in the original application form, and a second time before the interview" with an asylum officer. Id. The warning Mr. Pavlov received is the same as the warning that was printed on the I-589 form Ms. Ruga completed. See id. The Seventh Circuit concluded that "[t]his language complies with the statute and, because it was delivered by the

7

Attorney General's surrogate, supports disqualification under § 1158(d)(6)." Id.

Citing and following the Ninth and Tenth Circuits, the Seventh Circuit concluded

that delivery of this warning in the application itself, or at the time of the interview,

suffices:

> At least two other courts of appeals have concluded that delivery of
> this warning in the application itself, or at the time of the interview,
> suffices. Ribas v. Mukasey, 545 F.3d 922 (10th Cir. 2008); Cheema
> v. Holder, 693 F.3d 1045 (9th Cir. 2012). This court said the same
> thing in Siddique v. Mukasey, 547 F.3d 814 (7th Cir. 2008). If it was
> not a holding then, it becomes a holding now.

Pavlov, 697 F.3d at 618; see also Ribas, 545 F.3d at 930 (holding "that the written

notice provided on the asylum form is sufficient" to meet the statutory requirement

that an applicant be notified of "the consequences of filing a frivolous

application"); Cheema, 693 F.3d at 1049 ("We join the Tenth Circuit in concluding

that the written warning on the asylum application adequately notifies the applicant

of . . . the consequences of knowingly filing a frivolous application for

asylum . . . .").[4]

We find the reasoning of our colleagues on the Seventh, Ninth, and Tenth

Circuits to be persuasive. The notice provision makes no mention of the way in

---

[4] The holding in Cheema is somewhat in tension with an earlier Ninth Circuit opinion on which
Ms. Ruga relies. In Chen v. Mukasey, 527 F.3d 935 (9th Cir. 2008), the Ninth Circuit suggested
that "notice of consequences of knowingly filing a frivolous application . . . must be issued to a
petitioner by an IJ." Id. at 940. But in Cheema, the Ninth Circuit clearly rejected the suggestion
that an IJ must provide the warning required by INA § 208(d)(4)(A), 8 U.S.C. § 1158(d)(4)(A),
and described the statement in Chen suggesting otherwise as mere dictum. Cheema, 693 F.3d at
1049 n.3.

8

which the notification should be delivered, nor does it require that an IJ deliver the warning.  See INA § 208(d)(4)(A), 8 U.S.C. § 1158(d)(4)(A).  All the statute requires is that the Attorney General deliver a warning, the substance of which lets the applicant know that if she knowingly files a frivolous application she will be forever ineligible for any relief under the INA.  Id.

Here, the warning included in the I-589 application specifically advised Ms. Ruga that "[a]pplicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act."  We agree with the Seventh, Ninth, and Tenth Circuits that this written warning is itself enough to meet the statutory requirements.  We therefore reject Ms. Ruga's argument that the notice she was afforded was inadequate under the statute because it was not provided to her verbally or by an IJ.

## B.

Next, Ms. Ruga argues that the granting of her motion to reopen, which vacated the IJ's earlier frivolity finding, effectively vacated the earlier notice she received and thus triggered a requirement that she be re-notified.[5]

---

[5] The government argues that we should not consider this argument because it was not advanced before the BIA.  However, Ms. Ruga advanced the general argument that she did not receive notice consistent with the statutory requirements, even if she did not couch it in these terms. This is enough to satisfy the exhaustion requirements.  See Montano Cisneros v. U.S. Attorney

9

Ms. Ruga's position finds no support in the statute.  Notice must be provided "[a]t the time of filing an application for asylum."  INA § 208(d)(4), 8 U.S.C. § 1158(d)(4).  Reopening the adjudication of Ms. Ruga's asylum application did not have the effect of re-filing her application as well.  All it did was allow her to continue pursuing an application she had previously filed.  This being the case, the warnings she was given at the time she filed her application survived the granting of her motion to reopen.  There was no need to provide any new warning to her once the motion to reopen was granted, and indeed a warning given at that time— long after the application was filed—may not even comply with the statute's requirements.  See Ribas, 545 F.3d at 930 (considering a verbal warning provided by an IJ and noting that "it is questionable whether this warning provided any meaningful notice at all" since it was provided after the applicant "had already filed the first application").

## IV.

Because Ms. Ruga received notice consistent with the INA's requirement that she be notified of the consequences of filing a frivolous asylum application at the time of its filing, her petition for review is DENIED.

---

Gen., 514 F.3d 1224, 1228 n.3 (noting that a claim is adequately exhausted as long as the petitioner presents the "core issue" to the BIA).